# AMENDED BIDDING PROCEDURES

The following bid procedures (the "Bidding Procedures"), which were approved by an order for the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") dated _____, 2020, shall govern the Auctions and Sales of the real properties of Enterprise Community Funding, LLC ("Enterprise"), 108 Wallabout 5A Corp. ("108 Wallabout") and 293 Franklin, LLC ("293 Franklin", collectively with Enterprise and 108 Wallabout, the "Debtor") commonly known as and located at: (i) 28 Lynch Street, Unit 3L, Brooklyn, New York, owned by Enterprise ("Lynch Property"); (ii) 23 Walton Street, Unit 15C, Brooklyn, New York, owned by Enterprise "Walton Property"); (iii) 108 Wallabout located at 108 Wallabout Street, Unit 5A, Brooklyn, New York, owned by 108 Wallabout ("Wallabout Property"); and (iv) 293 Franklin Avenue, Brooklyn, New York, owned by 293 Franklin ("Franklin Property" together with the Lynch Property, Walton Property and Wallabout Property the "Properties"), as described in those certain *Plans of Liquidation* (the "Plans"), and *Disclosure Statements* (the "Disclosure Statement") which were filed by MLF3 Wallabout LLC (the "Proponent") with the Bankruptcy Court on or about May 15, 2020 in each of the Debtors' bankruptcy cases. The Proponent will seek entry of an order from the Bankruptcy Court authorizing and approving the Sale of the Properties free and clear of liens, claims, encumbrances, and interests, to the Successful Bidder(s) (as defined in the Plan and Disclosure Statement) as may be made at the Auction (as defined below).

A. Approvals. The proposed sale shall in all respects be subject to approval by the Bankruptcy Court and in compliance with (i) the applicable provisions of the Bankruptcy Code, (ii) the Bankruptcy Rules, and (iii) other applicable rules and law.

B. Assets to be Sold. The assets to be sold shall consist of the Properties, which will be sold in separate lots by Maltz Auctions, Inc., d/b/a Maltz Auctions (the "Broker"), who has been engaged by the Proponent. Such sales shall be free and clear of liens, claims, encumbrances and interests, except for valid written leases between the Debtor and residential tenants at the Properties (and in the event that the Successful Bidder is the Proponent, subject to its existing mortgage at the option of the Proponent), and shall be struck off to the party offering the highest and best bid as determined by the Proponent and Broker in their sole and absolute discretion, for the Properties as follows:

(i) Tier I Auction - Shall consist of individual sales of the following Properties in the following order:

1. 23 Walton Street, Unit C, Brooklyn, New York
2. 28 Lynch Street, Unit 3L, Brooklyn, New York
3. 293 Franklin Avenue, Brooklyn, New York
4. 108-110 Wallabout Street, Unit 5A, Brooklyn, New York

        (ii)    Tier II Auction

Group A - Shall consist of the bulk sale of the following Properties:

1. 23 Walton Street, Unit C, Brooklyn, New York
2. 28 Lynch Street, Unit 3L, Brooklyn, New York
3. 108-110 Wallabout Street, Unit 5A, Brooklyn, New York

Group B - Shall consist of the individual sale of the Franklin Property:

1. 293 Franklin Avenue, Brooklyn, New York[1]

Tier I Auction to be followed by Tier II Auction. At the conclusion of the Tier II Auction, the Proponent and Broker shall determine which of the bids are highest and best in their sole and absolute discretion.

C.    <u>Sale As Is, Where Is</u>. Each of the Properties shall be sold as is, where is, without any representation or warranty of any type whatsoever.

D.    <u>Qualification of Bidders</u>. Any potential bidder, other than the Proponent,[2] that wishes to submit a bid with respect to one or more Properties must demonstrate to the satisfaction of the Proponent, with recommendation from the Broker, that such potential bidder is a "Qualified Bidder." A Qualified Bidder is a potential bidder who delivers to the Broker in advance of the Auction (i) a written, signed, copy of the Terms of Sale supplied by the Broker and (ii) the required qualifying deposit (as shall be advertised by the Broker at www.MaltzAuctions.com, no less than 30 days prior to the scheduled auction). The required qualifying deposits shall be as follows: (i) $90,000 for the Lynch Property; (ii) $90,000 for the Walton Property; (iii) $90,000 for the Wallabout Property; and (iv) $150,000 for the Franklin Property, unless the Broker determines that different qualifying deposits will yield a more robust auction process.

E.    <u>Buyer's Premium</u>. The Buyer's Premium shall be 5% of the amount of the Successful Bid (defined below) payable by the Successful Bidder to the Broker within two (2) business days after the Auction, provided however, that if the Proponent or its affiliate is the Successful Bidder, the Buyer's Premium to be paid to the Broker by the Proponent shall be 1% of the Proponent's credit bid.

F.    <u>Deposit Increase</u>. Subject only to Section (E) hereinabove, if a Potential Bidder (other than the Proponent or its affiliate) becomes the Successful Bidder, within two (2) business days after the Auction, it shall, increase the Deposit as necessary to an amount equal to ten (10%) percent of (i) the final bid at the Auction, plus (ii)

---

[1] Sale price for the Franklin Property to be determined at the conclusion of the Tier I sales.
[2] For the avoidance of doubt, the Proponent shall be deemed a Qualified Bidder without having to satisfy D(i) or D(ii).

        the 5% Buyer's Premium, within 48 hours of the Auction TIME BEING OF THE ESSENCE.

G.    <u>Closing Deadline</u>.  The Successful Bidder(s) shall close on the purchase of the applicable Property(ies) within thirty (30) days after the completion of the applicable Auction, or on such other date as the Proponent and the Successful Bidder shall otherwise agree to in writing, or as may otherwise be directed by Order of the Bankruptcy Court (such date, the "<u>Closing Date</u>"), with TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO CLOSE ON THE CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING.  The Proponent will use its reasonable best efforts to obtain an order of the Bankruptcy Court approving each sale and a finding of good faith and non-collusive behavior of such sale pursuant to Section 363(m) and (n) of the Bankruptcy Code within one week of the completion of each Auction.

H.    <u>Proponent as Qualified Bidder</u>.  Notwithstanding anything herein to the contrary, the Proponent is a Qualified Bidder and may credit bid up to the amount of its claim for the Properties without the need for any deposit or fulfilling the other requirements for a Potential Bidder to be a Qualifying Bidder.

I.    <u>Auction</u>.  In the event that the Broker receives by the Bid Deadline one or more bids that it and Proponent deem in their sole discretion to constitute Qualified Bids, the Broker shall conduct an auction with respect to the Properties (the "<u>Auction</u>"). The Auction shall take place on a date to be set by the Proponent and Broker no later than 5 business days after the applicable Bid Deadline at 11:00 a.m. (ET) (the "<u>Auction Time</u>") at such place and time as the Broker shall notify all Qualified Bidders, the Proponent, and other invitees via e-mail or facsimile not later than one (1) business day before the Auction Time (or re-scheduled Auction Time, as applicable). If, however, no such other Qualified Bid is received by the Bid Deadline, then the Auction will not be held, and Broker shall so notify the Proponent no later than one (1) business day after the Bid Deadline and the Proponent shall proceed to seek approval of the Bankruptcy Court of a sale of the Properties to Proponent or its affiliate pursuant to Proponent's credit bid.  The Auction may be conducted virtually, in the discretion of the Proponent and Broker, in which online bidding will be made available for pre-registered bidders via Broker's online bidding App available for download in the App Store or on Google play, and via desktop bidding at [RemoteBidding.MaltzAuctions.com](RemoteBidding.MaltzAuctions.com).  The Auction shall be governed by the following procedures:

    (i)    Only authorized representatives and respective counsel of each of the Qualified Bidders, the Proponent, the Debtor, and the Broker shall be permitted to attend and participate at the Auction, unless otherwise agreed to by the Broker in its sole discretion;

    (ii)    Only the Proponent and other Qualified Bidders shall be entitled to make any subsequent bids at the Auction;

(iii) Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

(iv) Bidding shall commence at the amount of the highest and best Qualified Bid submitted by the Qualified Bidders by the Bid Deadline; <u>provided, however</u>, that bidding may be conducted on each of the Property separately, or by groups of Properties as set forth in Section B hereinabove;

(v) The Proponent shall have the exclusive right to set the bidding increments with consultation from the Broker;

(vi) The Proponent and other Qualified Bidders shall participate in person at the Auction (or through a method designated by Broker), through a duly authorized representative with authority to bind the entity;

(vii) The Auction will be conducted so that the Proponent and each Qualified Bidder will be informed of the previous bid;

(viii) The Auction shall continue until there is only one final offer for each of the Properties or one final offer for all the Properties (either in groups or all together) that the Proponent determines, with recommendation from the Broker, subject to Bankruptcy Court approval, is the highest and best offer submitted at the Auction from among the Qualified Bidders and the Proponent (the "<u>Successful Bid</u>"). The bidder submitting each such Successful Bid shall become a "<u>Successful Bidder</u>" and shall have such rights and responsibilities set forth herein, in the Plan and in any purchase and sale agreement.

(ix) At the end of the Auction, the Broker shall also announce the next highest and otherwise best offer(s) after the Successful Bid (the "<u>Next Highest Bid(s)</u>," and the Qualified Bidder that submitted such bid, the "<u>Next Highest Bidder(s)</u>"), each such Next Highest Bid being for one or more of the Properties as applicable.

(x) The Proponent reserves the right to seek approval of the Next Highest Bid(s) as a back–up bid and may seek approval at the Sale Hearing to close the Sale to the Next Highest Bidder(s) if the Successful Bidder(s) fails to close for any reason;

(xi) if the Next Highest Bidder(s) is determined by the Proponent to have submitted the Next Highest Bid(s), or next best bid (the "<u>Next Best Bid(s)</u>") at the Auction, it will be considered a back-up bid (the "<u>Backup Bid(s)</u>") and, the Next Highest Bidder(s), therefore, to be designated the back-up bidder (the "<u>Back-up Bidder(s)</u>"), who shall be notified in writing that the Proponent has determined to proceed with the Back-up Bid(s) after default by the Successful Bidder(s), the Potential Bidder(s) shall close on the purchase of the Property on the Back-up Closing Date (as

        hereinafter defined), with TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE AND TO PAY THE BALANCE OF THE PURCHASE PRICE ON THE BACK-UP CLOSING DATE;

(xii)   if (a) a Qualified Bidder is a Successful Bidder, the Deposit shall become non-refundable and shall be forfeited by such Successful Bidder as liquidated damages in the event such Successful Bidder shall fail to close the purchase of the Property(ies) on the Closing Date, except as otherwise expressly permitted under the sale agreement entered into between the Proponent and such Successful Bidder(s); and (b) if the Back-up Bidder(s) and the Broker determine to proceed with the Back-up Bid(s) after default by the Successful Bidder(s), the Deposit shall become non-refundable and shall be forfeited by such Back-up Bidder(s) as liquidated damages if the Back-up Bidder(s) shall fail to close the purchase of the Property on the Backup Closing Date(s), except as otherwise expressly permitted under the sale agreement entered into between the Proponent and such Back-up Bidder(s); and

(xiii)   If more than one Qualified Bidder(s) is received, after selection of the Successful Bidder(s), the Proponent shall determine in its sole and absolute discretion, which bid constitutes highest and best Successful Bid and Back-up Bid.

J.   <u>Closing on Back-up Bid</u>. If for any reason the Successful Bidder(s) shall fail to timely comply with section (F) above, the Proponent, in accordance with the provisions of the sale agreement entered into between the Proponent, on behalf of the Debtor's estate, and the Successful Bidder(s), determine to proceed with the Back-up Bid(s), the Back-up Bidder(s) shall close on the purchase of the Property and pay the amount of the Back-up Bid(s), less its Deposit previously posted, on the later of the Closing Date and thirty (30) business days after written notice of the Successful Bidder's default in closing (the "<u>Back-up Closing Date</u>"), with TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE ON THE BACK-UP CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING. If the Proponent proceeds with the Back-up Bid(s), then the Back-up Bidder(s) shall be obligated to close title to the Property(ies) and there shall be no contingency of any kind or nature that will permit the Back-up Bidder(s) not to proceed on the Back-up Closing Date other than the inability of the Proponent to deliver title to the Property(ies). In the event the Back-up Bidder(s) shall be obliged, but shall fail, to timely close purchase of the Property(ies) in accordance with the provisions of the sale agreement entered into between the Proponent and the Back-up Bidder(s), the Back-up Bidder(s) shall be in default, and the Back-up Bidder(s) shall forfeit its Deposit. Notwithstanding the foregoing, the Purchaser shall have the right, but not the obligation, to extend the Back-up Closing Date up to an additional ten (10) business days (the "<u>Adjourned Back-up Closing Period</u>"), with TIME BEING OF THE ESSENCE as to the Back-up Bidder's obligation to

       close prior to the expiration of the Adjourned Back-up Closing Period; and in such event, if the Back-up Bidder(s) shall fail to close the purchase of the Property prior to expiration of the Adjourned Back-up Closing Period in accordance with the provisions of its sale agreement, the Backup Bidder(s) shall be in default and the Back-up Bidder(s) shall forfeit its Deposit.

K.    At the conclusion of the Auction, the Broker will return the Qualifying Deposits to all bidders, except for the Successful Bidder and the Back-up Bidder. The Back-Up Bidder's Qualifying Deposit shall be returned within two (2) business days following the Successful Purchaser posting the total required Deposit and Buyer's Premium.